0544

Mildred AMICK, Appellant, v. Kaye T. HAGLER, Respondent.
(334 S. E. (2d) 525)

Court of Appeals

*Brian L. Boger*, Columbia, *for appellant.*

*James P. Craig*, Columbia, *for respondent.*

Heard May 28, 1985.

Decided Aug. 27, 1985.

SANDERS, Chief Judge:

Respondent Kaye T. Hagler sued appellant Mildred Amick in equity to enforce a contract by which Amick agreed to sell Hagler certain real property. The trial judge entered judgment in favor of Hagler. Amick appeals. We affirm the order of the trial judge as modified and remand.

On June 27, 1981 Amick entered into a contract to sell Hagler a lot with improvements. Amick owned the property as rental property. Hagler originally planned to use the property as her personal residence but now also wants to own it as rental property. Amick was represented in the negotiations leading to the contract by her son-in-law, a real estate agent employed by an established real estate firm. Both Amick and Hagler are experienced businesswomen. Amick owns and operates a private detective agency. Hagler is the vice president of a bank. The principal terms of the contract may be fairly summarized as follows:

1. The parties agreed to a purchase price of $54,000.
2. Hagler agreed to purchase the property if she could obtain a $51,300 conventional loan at a rate of not more than 11¾ percent per annum.
3. Amick agreed to convey a marketable title free of encumbrances at the closing.
4. The parties agreed that the sales contract could be "enforceable by either party by specific performance. . . ."
5. The parties agreed that the closing date and the date of Hagler's occupation of the premises would occur "on or before July 31, 1981."
6. Amick agreed to provide $800 towards closing costs.

Thereafter, Hagler secured a commitment for the loan which the contract envisioned and was ready, willing and able to complete the sale. An examination of the title to the property revealed an unsatisfied second mortgage dated July 2, 1962, in the principal amount of $1,600 payable at 6 percent interest. Amick claimed that the mortgage had been paid. Hagler proposed that sufficient funds be escrowed to satisfy the mortgage until Amick could have it removed as a cloud on the title. Amick rejected this proposal and refused to close saying she did not want to tie up the funds proposed to be escrowed even though she would net substantially in excess of this amount at closing.

In February 1983 Hagler brought this action seeking specific performance of the contract. In addition, Hagler sought "proper adjustment in purchase price for the damages suffered by the Plaintiff and the loss of her loan at the rate of Eleven and three-quarters (11.34%) (sic) percent, and for such other and further relief as this Court deems just and proper." As of the date of trial, the cloud on the title to the property presented by the second mortgage still had not been removed. Amick testified that had she known the second mortgage was unsatisfied of record and funds would have to be escrowed until it was removed, she would have raised the price of the property by the amount of these funds. Hagler testified that she had been damaged because she had lost her commitment for a loan at 11¾ percent interest and the most recent loans obtainable were at interest rates in excess of this rate with higher closing costs.

The trial judge ordered Amick to convey the property to Hagler and further ordered Amick to provide "owner financing" for Hagler in accordance with the terms of the loan which had been lost or at the option of Hagler, to make a reduction in the purchase price commensurate with the increase in financing costs which might be incurred by Hagler. Finally, the trial judge ordered Amick to pay $800 towards Hagler's closing costs. Amick argues that the trial judge erred both in ordering specific performance and in giving Hagler the option of requiring her to provide "owner financing."

We conclude that the trial judge did not err in ordering specific performance. The decision to grant or refuse specific performance of a contract to sell real property is within the sound discretion of the trial judge. *Butler v. Schilletter*, 230 S. C. 552, 561, 96 S. E. (2d) 661, 665 (1957). The decision cannot be arbitrary and must be exercised in accordance with the rules and practices of equity and with regard to the facts and circumstances of the particular case. *Adams v. Willis*, 225 S. C. 518, 527, 83 S. E. (2d) 171, 175 (1954). Specific performance will not be ordered unless the contract expresses the true intent of the parties and is fair, just and equitable. *McChesney v. Smith*, 105 S. C. 171,

176, 89 S. E. 639, 641 (1916).[1] But specific performance of a contract to sell real property will be ordered where the contract "is fair and was entered into openly and aboveboard." *Adams*, 225 S. C. at 528, 83 S. E. (2d) at 176. Specific performance is a proper remedy under the rules and practices of equity and the facts and circumstances of this case. The fact that Hagler changed her plans about the use she intends to make of the property is of no consequence. There is no evidence that the contract fails to express the true intention of the parties or is not fair, just and equitable. To the contrary, it appears that the contract is fair and was entered into openly and aboveboard.

We further conclude, however, that the trial judge did ▆ err in giving Hagler the option of requiring Amick to provide "owner financing." A contract can be reformed only where there is clear and convincing evidence of either a mutual mistake or strong and extraordinary circumstances showing that it would be a great wrong to enforce it. *Sims v. Taylor*, 276 S. C. 640, 642-643, 281 S. E. (2d) 229, 230 (1981). Courts have no authority to alter contracts or make new contracts for the parties. *Gilstrap v. Culpepper*, 283 S. C. 83, 86, 320 S. E. (2d) 445, 447 (1984). "They can only require parties to contracts to specifically perform such contracts as they themselves make." *White v. Felkel*, 222 S. C. 313, 324, 72 S. E. (2d) 531, 536 (1952). There is no evidence here of a mutual mistake. Nor are there any circumstances showing that it would be a great wrong to enforce the contract entered into by the parties. The parties obviously did not contract for Amick to finance any part of the purchase price of the property. Thus, the trial judge had no authority to require that Amick provide "owner financing."

We specifically do not address any question of ▆▆ whether the trial judge erred in ordering Amick to reduce the agreed upon purchase price by way of awarding Hagler the special damages which she suffered in

---

[1] For example, our Supreme Court has denied specific performance where there was a gross inadequacy of consideration, a confidential relationship of patient and physician between the parties, and the seller was infirm in body and mind. *Hodge v. Shea*, 252 S. C. 601, 168 S. E. (2d) 82 (1969).

losing the loan commitment.[2] Amick did not take exception to this aspect of the order or mention it in her brief. The failure of an appellant to raise a question by way of an exception constitutes a waiver. *Bentrim v. Bentrim*, 282 S. C. 333, 335, 318 S. E. (2d) 131, 133, (Ct. App. 1984). A provision of an order neither excepted to nor raised in the brief is not properly before the court on appeal. *Shipman v. DuPre*, 222 S. C. 475, 483, 73 S. E. (2d) 716, 719-20 (1952).[3]

For these reasons, we modify the order of the trial judge so as to eliminate the option given to Hagler of requiring that Amick provide "owner financing," affirm the order in all other respects, and remand the case for a determination of a proper reduction in the purchase price as ordered.

Affirmed as modified and remanded.

GARDNER and GOOLSBY, JJ., concur.

---

[2] It is clear that in addition to ordering specific performance, a court may award special damages resulting from a refusal to convey or a delay in conveying real property according to the terms of a contract. *Butler*, 230 S. C. at 557-558, 96 S. E. (2d) at 663-664.

[3] "More simply put, appellate courts in this state, like well-behaved children, do not speak unless spoken to and do not answer questions they are not asked." *Langley v. Boyter*, 284 S. C. 162, 325 S. E. (2d) 550, 561 (Ct. App. 1984), *quash'd on other grounds*, 332 S. E. (2d) 100 (Sup. Ct. 1985).